CLIFTON *v.* STATE

No. 40573          October 7, 1957          97 So. 2d 363

*L. Percy Quinn, Noel W. Buckley,* Jackson, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

The appellant Claude C. Clifton, together with Austin Hanna, were jointly indicted for the burglary of a store building in Jackson, Mississippi, "the property of the Jackson Jitney-Jungle Stores, Inc., a corporation." The appellant applied for and obtained a severance when his case was called for trial. Austin Hanna entered a plea of guilty at the May 1956 term of court and received a sentence of imprisonment in the state penitentiary. The appellant was tried and convicted at the November 1956 term of court and sentenced to serve a term of seven years in the state penitentiary on the charge of burglary.

On Christmas Eve of 1955, after ten o'clock P. M., two men were seen on top of the roof of a store building south of U. S. Highway 80 and east of U. S. Highway 51 in Jackson, Mississippi, and which store building was referred to by some of the witnesses as the "Jitney Jungle Store."

After the two men were first seen on the roof of the store building, a city-wide alarm was given to the police officers of the City of Jackson, a number of whom, to-

gether with some detectives and the manager of the store, immediately converged upon the scene.

Upon this appeal Claude C. Clifton assigns three grounds for a reversal. First, that the State failed to prove the existence of the Jackson Jitney Jungle Stores, Inc., *and its ownership of the store building;* Second, that the State failed to prove the corpus delicti, and introduced over the objection of the accused certain alleged admissions by him tending to implicate him in the alleged crime, in the absence of prior proof of the corpus delicti; and Third, that the verdict of the jury is against the overwhelming weight of the competent evidence.

The manager of the store in question was asked in the outset of his testimony, as the first witness for the State, "Mr. Murphy, by whom if anyone, are you employed?" and answered "Jackson Jitney Jungle Incorporated", omitting from the corporate name set forth in the indictment the word "stores". He was next asked the further question concerning his employment, and he said that he was "grocery supervisor for the group of stores" and further stated that he was "Manager of Jitney Jungle No. 19 at Mart 51," and that Jitney Jungle No. 19 was in a shopping center immediately behind the Alamo Plaza Tourist Court at the junction of Highway 51 and Highway 80, just south of this junction. Then throughout the two-volume record of the trial, the place burglarized was repeatedly referred to as the Jitney Jungle Store, and a map or plat showing the location of the several stores in this shopping center was introduced in evidence and it contained a location marked "Jitney", which the witnesses identified as being one of the Jackson Jitney Jungle Stores; and the store on the roof of which the two-foot square hole had been cut, and which the codefendant Hanna, as a witness for the defendant Clifton, admitted that he and a companion, whom he was unwilling to identify, cut the hole through the roof with the intention of getting down to the office and blowing

the safe. The building was shown to be Jitney Jungle No. 19 in Mart 51.

Mr. Luke, a detective, testified that about ten o'clock P. M. on the night of December 24, 1955, he and detective Cockrell "received a radio call that someone had been seen on the roof of the Jitney Jungle Store in Mart 51, which is located on the Terry Road, south of Highway 80, in the City of Jackson," Moreover, it was abundantly shown by the proof that this two-foot square hole had been cut through the roof of the Jitney Jungle Store at that location, and that the ladder upon which the co-defendant Hanna and his companion had ascended to the roof was found on the roof of the Jitney Jungle Store, as well as the numerous burglar-tools intended for use in the commission of the crime. A number of the witnesses were testifying about the Jitney Jungle Store shown on the map or plat of the shopping center, wherein this particular Jitney Jungle No. 19 was located.

It is undisputed that two men had let themselves down from the roof about the time the officers and detectives arrived, by holding onto the side wall and jumping down to the ground. It is also undisputed that both the co-defendant Hanna and the appellant had sprained their ankles in the fall, Hanna and others having so testified as to his injury, and detective Luke and others having testified to a similar injury to the ankle of the appellant when he was taken into custody at the scene after the two men had jumped to the ground.

The witness Hanna also admitted that the ladder used by the culprits was made near a light pole on a gravel road south of the shopping center, and he identified at the trial the saw and hammer that were used in making the ladder, and which the appellant had told the officers that they had left at the light pole where they were later found.

Moreover, as to whether or not the proof against the appellant was sufficient to entitle him to a directed ver-

dict of the jury in his favor, the record discloses that detectives Luke and Cockrell arrived at the scene in time to hear the noise at the side of the building and which they concluded was made when the two men jumped to the ground, since they saw them getting up and undertaking to run. One ran in a northeasterly direction, and he was captured and found to be Austin Hanna; the other man ran north, and when the detectives fired at them, the appellant went under an automobile in a car corral and was taken into custody by the detectives at the scene. The witness Hanna testified that his confederate ran into the corral among the cars, but denied that the appellant was his confederate. Nevertheless, none of the numerous officers, detectives and others who went to the scene, seemed to have seen any suspects about the building except Hanna and the appellant.

Other officers summoned the fire department by radio to bring a ladder, by which they ascended to the roof of the building. Upon the roof they found a hammer, saw, brace and bit and a croaker sack containing some wiring, fuses, dynamite stick and caps, the ladder used by the culprits, etc. While one of the officers was descending the ladder with the croaker sack, the appellant said in the presence of one or more officers who testified in the case that ''There is dynamite in that sack'', showing that he had knowledge of what was to be done and what had been done on the roof. Moreover, the appellant sprained his ankle and explained to the officers that it was sprained when he jumped. After he was taken into custody and placed in jail, he was removed to the hospital and later returned to the jail. Thereupon, he was asked by one of the officers as to where they got the ladder which was used in connection with the alleged crime, and the accused stated in substance that ''We built it down on the gravel road below the group of stores'', and that they placed the hammer and saw which they had used in the building of the ladder at a light pole. The officer

later found the hammer and saw at the place where the accused and his witness Hanna had stated that they had been left. They were introduced in evidence.

As hereinbefore shown the codefendant Hanna was introduced as a witness on behalf of the appellant. He stated that three of four days prior to the burglary he borrowed the appellant's car from him at Dallas, Texas, and agreed to return the same in a few days; that he told the appellant that he was going to leave the state but did not tell him where he was going; and that he intended to rob some place when he left Dallas, Texas, with the car, but he did not know then what place he would rob. He further testified that on Christmas Eve morning at about eight or eight thirty A. M. he telephoned the defendant from Leeds, Alabama, (east of Birmingham), by long distance at Dallas, Texas, and got him to agree to meet him at the Jackson Cafe on Highway 80 in Jackson, Mississippi, about eight P. M. of that day, and that the appellant and at least one companion met him at the cafe at the time agreed upon, but that he then borrowed the car for use for about two more hours and agreed to meet the appellant at Patterson's Drug Store in the shopping center hereinbefore mentioned. After admitting his own guilt to the crime of burglarizing the store mentioned in the indictment, he tesified that he had a companion, whom he was unwilling to identify, as aforesaid, when they went on top of this Jitney Jungle Store and cut the hole in the roof, but claimed that the appellant was not his companion in the crime. The appellant introduced as his only other witness his mother who corroborated the witness Hanna in regard to the long distance, collect telephone call from Leeds, Alabama, to Dallas, Texas. It is not explained as to how the companions of the appellant on the trip from Dallas, Texas, to Jackson, Mississippi, first learned that the appellant wanted to come to Jackson that day, or wanted them to bring him to meet the witness Hanna.

But it is needless to further review the facts disclosed by this record on either of the points made for a reversal. Enough has been hereinbefore stated to establish the ownership of the building when the testimony is considered as a whole, and to prove the corpus delicti and the guilt of the appellant beyond every reasonable doubt. Therefore the judgment appealed from must be affirmed.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.*, concur.